IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SANDRA JOY GENTRY,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | 4:18CV3044<br><br>MEMORANDUM AND ORDER |

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) that the plaintiff, Sandra Joy Gentry is not disabled. Gentry seeks reversal of the decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (Commissioner), as she asserts the decision is not supported by substantial evidence. Filing No. 15. The Commissioner seeks affirmance of the decision, asserting that Gentry had a fair hearing and full administrative consideration in accordance with applicable statutes and regulations, and the substantial evidence on the record as a whole supports the Commissioner's decision.  Filing No. 17.

I. Procedural Background

Gentry filed for Period of Disability and Disability Insurance benefits on April 30, 2015, alleging disability beginning September 1, 2014. Filing No. 9-2 at CM/ECF p. 50. The application was denied on August 17, 2015. Id. Plaintiff requested reconsideration and that request was denied on October 7, 2015. Id. Plaintiff requested a hearing on November 11, 2015. A hearing was held before an Administrative Law Judge (ALJ) on July 21, 2017. Id.

On October 3, 2017, the ALJ issued a written decision DENYING Gentry's claim. Plaintiff timely filed a request for review of the ALJ's decision. The Appeals Council denied the request on January 29, 2018. Filing No. 9-2 at CM/ECF p. 2-5. Plaintiff timely filed her appeal in this court pursuant to 42 U.S.C. 405(g), on March 23, 2018. Filing No. 1.

## II. The ALJ's Decision

The ALJ evaluated Gentry's claim through the five-step evaluation process to determine whether Gentry was disabled under sections 216(i) and 223(d) of the Social Security Act. As reflected in his decision, the ALJ made the following findings:

1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2) The claimant has not engaged in substantial gainful employment since September 1, 2014, the alleged onset date. (20 CFR 404.1571 *et. seq.*).

3) The claimant has the following severe impairments: depression, anxiety with panic attacks, diabetes mellitus with neuropathy, hypertension, obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, and bilateral shoulder tendinitis (20 CFR 404.1520(c).

4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5) The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can engage in no more than occasional overhead reaching bilaterally; she can

engage in no more than frequent handling bilaterally; and she can engage in no more than occasional pushing, pulling, or the operation of foot controls with the lower extremities bilaterally. Mentally, the claimant would be limited to unskilled, routine, and repetitive instructions and tasks; she could tolerate no more than occasional changes in a work place environment or routine; and she could have no more than occasional interaction with co-workers, supervisors, or the general public.

6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7) The claimant was born on April 29, 1969 and was 45 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).[1]

8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

---

[1] The court notes the discrepancy between Gentry's age and the age category for "younger individuals" as referenced by the ALJ's decision. Since Gentry's briefs do not raise this discrepancy as a basis for reversal, and the court will not address it in this Memorandum and Order.

## III. Issues Raised for Judicial Review

Gentry requests judicial review of the ALJ's decision, asserting that the following arguments support her claim for reversal.

1) The ALJ erred by failing to analyze the opinion evidence in accordance with the regulations, Agency policy, and Eighth Circuit precedent.

2) The ALJ erred in relying on vocational expert testimony to fulfill his step 5 burden without properly addressing her objections memorandum and rebuttal evidence related to the vocational expert's testimony.

Filing No. 16.

## IV. The Record and Proceedings Before the ALJ

Gentry was 45-years-old when she submitted her application for benefits. She claimed mental and physical conditions which limited her ability to work, including: 1) Depression; 2) Anxiety; 3) PTSD; 4) Type 2 Diabetes; 5) Diabetic Neuropathy; 6) High Blood Pressure; and, 7) Back Problems in the Lumbar Region. Filing No. 9-7 at CM/ECF p. 6. In addition, Gentry testified that she has a diagnosed medical history of diabetic retinopathy, obesity, disc disease of the lumbar spine, arthritis in multiple joints, and she suffers from panic attacks. Filing No. 9-2 at CM/ECF p. 72-73. She has left and right shoulder tendinitis and had surgery on her left shoulder. Id.

Gentry has a high school education and completed two years of college. She has an associate degree in science and is a licensed practical nurse. At the time of her hearing she was 48-years-old. Filing No. 9-2 at CM/ECF p. 76. Gentry

has a driver's license, but rarely drives because she has difficulty seeing and was recently in a car accident. Filing No. 9-2 at CM/ECF p. 76.

She began working at a nursing home in 2003. Gentry stated she had been absent from work on a weekly basis while she was taking her husband to medical appointments for cancer treatment. Filing No. 9-2 at CM/ECF p. 78. Her husband died on December 28, 2013, and Gentry stated that she became unstable, depressed, and suffered from panic attacks and anxiety. Filing No. 9-2 at CM/ECF p. 78. She continued to work, but frequently took leave throughout the period from December 28, 2013 to September 1, 2014, at which time she terminated her employment. Filing No. 9-2 at CM/ECF p. 77-79.

Her father died on January 19, 2015, and her mother died on February 19, 2015. Id. Gentry stated that her mental health condition has worsened since she stopped working. Filing No. 9-2 at CM/ECF p. 80. She said she experienced increased depression, isolation, and lethargy, and she "felt wobbly all the time." She stated that the primary reason she feels that she cannot return to work is due to her mental health. Filing No. 9-2 at CM/ECF p. 78.

Gentry sought treatment by Dr. Steven Senseney and Angela Mediema, a physician assistant. Senseney treated her for depression and bereavement with Ketamine injections starting in August 2014. Filing No. 9-11 at CM/ECF p 488. Gentry moved into her parent's home after they died, and she currently resides there with her sister. Id. She has three sisters who help her, and she is in communication with her aunt. Filing No. 9-2 at CM/ECF p. 81. Gentry has infrequent contact with individuals outside of her immediate family. She maintains contact with her therapist through video conferencing. Filing No. 9-2 at CM/ECF p. 82. In July 2017, her sessions with the therapist decreased from twice per week to once per week. She also sees a doctor "at least two to three times a week." Id.

Gentry testified that she was able to bathe herself, but sometimes she doesn't bathe for a few days because she doesn't feel like getting up, (Filing No. 9-2 at CM/ECF p. 85); her shoulder pain makes it difficult to bathe, and she has difficulty reaching above her head, (Filing No. 9-2 at CM/ECF p. 86); and she has difficulty opening jars or beverage containers because of weakness in her hands, (Filing No. 9-2 at CM/ECF p. 87). She testified that she has back pain, which makes it difficult to stand for longer than five minutes at a time; she can sit for approximately ten minutes at a time, and uses ice, heat, and pain medication to manage the pain in her back and legs, (Filing No. 9-2 at CM/ECF p. 86), and her doctor advised her not to bend over or lift due to spondylosis. Filing No. 9-2 at CM/ECF p. 88.

Senseney submitted a Treating Source Statement indicating he had treated Gentry for "30+ years" for depression, diabetes, anxiety, panic disorder, chronic low back pain, sleep apnea, diabetic retinopathy, diabetic neuropathy, and diabetic foot ulcers. Filing No. 11-8 at CM/ECF p. 46. The details of his statement will be discussed, in greater detail, below.

The ALJ received Disability Determination Explanation forms dated August 17, 2015 and October 6, 2015. The August form is for the DIB claim at the initial level and the October form is for the DIB claim at the reconsideration level. Both documents state Gentry had moderate restriction of activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration persistence or pace. Filing No. 9-4 at CM/ECF pp. 7, 22. Both contain findings that Gentry's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by objective medical evidence alone, and her statements were "partially credible." Filing No. 9-4 at CM/ECF pp. 8, 23. The RFC in both documents assigned exertional limitations which included occasionally pulling up to 50 pounds, frequently lifting and/or

carrying 25 pounds, standing and/or walking for about 6 hours in an 8-hour workday and sitting for a total of about 6 hours in an 8-hour workday. Filing No. 9-4 at CM/ECF p. 9, 23-24. Gentry was rated as "moderately limited" in a few areas of her mental residual functional capacity, which includes the ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Filing No. 9-4 at CM/ECF pp. 10, 26.

A vocational expert (VE) testified that a hypothetical individual with the same work profile and limitations as Gentry would not be able to perform the past work described due to the skills and exertion required of her job as a nurse. Filing No. 9-2 at CM/ECF p. 102. The VE testified that there would be hypothetical unskilled work available in significant numbers in the national economy which would be able to accommodate light exertion limitations. He offered three suggestions, including mail clerk, inspector and hand packager, and assembler of electrical accessories. Each of these jobs are unskilled with light level exertion. Filing No. 9-2 at CM/ECF p. 102-103.

If the hypothetical individual was changed to sedentary exertion, there would be jobs available in significant numbers in the national economy as well. Anderson offered three additional suggestions, including a touch-up screener who inspects electronic assemblies, a patcher who puts together electrical components, and a table worker who inspects linoleum materials. Filing No. 9-2 at CM/ECF p. 103.

If the hypothetical individual was limited to no more than five minutes of uninterrupted standing and no more than ten minutes of uninterrupted sitting without a change in position, the jobs the VE described would no longer be available. Filing No. 9-2 at CM/ECF p. 104. Similarly, if the hypothetical individual

7

would have to miss up to four days per month on an unscheduled basis and/or miss 25 percent of the workday off task to manage their conditions, these conditions would independently eliminate all jobs. Filing No. 9-2 at CM/ECF p. 104.

V.     Analysis

A denial of benefits by the commissioner is reviewed to determine whether it is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001) .

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010). The court should not overturn an ALJ's decision so long as it is in the "zone of choice" even if the court disagrees with the ALJ's conclusion. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). The court "defer[s] heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

To establish that she is entitled to benefits, Gentry must show she cannot perform substantial gainful activity because of a medically determinable impairment that lasted or can be expected to last for a continuous period of not less than twelve months. See 42 U.S.C. § 423(d). Gentry claims the court must

reverse the Commissioner's decision because the ALJ failed to analyze the opinion evidence in accordance with the regulations, policies, and precedent, and because the ALJ relied on vocational expert testimony to fulfill his step five burden without addressing her objections and rebuttal evidence. For the reasons discussed below, these arguments will be denied.

1. Failure to analyze the opinion evidence in accordance with the regulations, policies and precedent

    A. Evidence of Treating Physicians

At the administrative hearing, the treating source statement of Senseney was received as an exhibit. Senseney opined that Gentry's symptoms would likely be severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks, and she would be "off task" for over 25% of a typical workday. Filing No. 11-8 at CM/ECF p. 46. He opined that Gentry would likely be absent from work due to her impairments and treatment approximately 4 times per month. Filing No. 11-8 at CM/ECF p. 46. Senseney indicated that Gentry could never lift and could rarely carry less than 10 pounds. He opined that in an 8-hour workday Gentry could sit for 2 hours, stand for 1 hour, and walk for 1 hour. Filing No. 11-8 at CM/ECF p. 47. Mediema also submitted a treating source statement in which she opined that Gentry was limited to varying degrees in her ability to understand, remember, and apply information due to her depression and anxiety. Mediema's assessment of Gentry's predicted time "off task" and potential days absent from work were the same as Senseney's assessment. Filing No. 11-5 at CM/ECF p 56-62. These evaluations, if given the controlling weight, would have required the ALJ to find that Gentry was unable to perform any job in the national economy and therefore was disabled. The ALJ, however, accorded "little weight" to the opinions of Gentry's treating physicians. Filing No. 9-2 at CM/ECF p. 58.

Gentry argues that the ALJ failed to give the appropriate weight to the evidence and failed to provide sufficient reason for doing so. Specifically, Gentry argues that the ALJ identified her treating sources, Senseney and Mediema, but gave "no obvious consideration to the regulation that provides the opinions of treating sources are generally entitled to more weight." See 20 C.F.R. §

404.1527(c)(2). The Commissioner argues that the ALJ properly evaluated the opinion evidence and provided supported reasons for the weight he assigned to each opinion.

"[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" Prosch v. Apfel, 201 F.3d 1010, 1012–1013 (8th Cir.2000), quoting 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should control. Tilley v. Astrue, 580 F.3d 675 (8th Cir. 2009). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Hogan v. Apfel, 239 F.3d at 961 (8th Cir. 2001).

If an ALJ discounts a treating physician's opinion, his or her opinion must explain why the opinion was discounted. Here, the ALJ gave the opinions of Senseney and Mediema "little weight," specifically finding that the opinions were not supported by the reliable evidence of record. Filing No. 9-2 at CM/ECF p. 58. The ALJ observed that the "extreme opinions" of Senseney and Mediema are inconsistent with Gentry's "own admissions as to her activities of daily living." Id. Gentry testified that she tends to her own personal hygiene needs, she uses a computer, uses Facebook to correspond with a small social circle, maintains a relationship with her sisters, and can drive a car, prepare meals, and sit through a movie on a weekly basis. Gentry also reported to physicians and physical therapists that she was able, at times, to do yardwork, clean out her parents' house and her pool, take a trip to Omaha, and go shopping, and to a casino. Filing No. 9-11 at CM/ECF pp. 97, 101, 114; Filing No. 10-7 at CM/ECF pp. 46, 97.

The ALJ noted that Gentry had been diagnosed with depression and anxiety with panic attacks related to traumatic events in her life, which is supported by the evidence in the record. Although Gentry's treatment notes indicate she often presented as worried or sad, she also frequently presented with organized thoughts and a normal affect, she maintained eye contact, she was fully alert, oriented, cooperative, and on-task. Filing No. 9-2 at CM/ECF pp. 38, 58; Filing No. 9-10 at CM/ECF pp. 8, 11; Filing No. 9-11 at CM/ECF pp. 17, 111; Filing No. 10-5 at CM/ECF pp. 10, 95; Filing No. 10-6 at CM/ECF pp. 65, 98, 101; Filing No. 10-7 at CM/ECF p. 7; Filing No. 11-5 at CM/ECF p. 35-36; Filing No. 11-6 at CM/ECF p. 5, 20; Filing No. 11-7 at CM/ECF pp. 8, 10, 12, 14, 18, 32, 35, 37, 39, 41, 43, 45, 47, 49, 51, 54, 56, 58, 60, 62, 64, 66, 68, 70. In addition, treatment notes from the Cherry County Clinic indicated she presented with a "grossly normal" mental status, and normal affect and/or judgment on numerous occasions between September 8, 2014, and October 10, 2017. Filing No. 9-2 at CM/ECF p. 45; Filing No. 9-11 at CM/ECF pp. 47, 74, 78; Filing No. 10-4 at CM/ECF p. 25; Filing No. 10-5 at Cm/ECF pp. 38, 45, 63, 67, 83, 110; Filing No. 10-6 at CM/ECF pp. 31, 84, 92; Filing No. 10-7 at CM/ECF p. 7, 24, 54, 60, 73; Filing No. 11-1 at CM/ECF p. 8; Filing 11-4 at CM/ECF pp. 8, 13, 18, 23, 27, 30, 44, 48, 52, 56, 61, 67, 80, 85, 90, 94. Treatment notes from the Cherry County Clinic also state Gentry has "done well" with injections of ketamine, and she planned to wean from the medication in May 2017. Filing No. 11-6 at CM/ECF p. 37.

Senseney cited Gentry's low back pain and spondylolisthesis as additional support for the standing, sitting, walking, lifting, and carrying limitations he assessed. Filing No. 11-8 at CM/ECF p. 47. The ALJ also observed that Senseney's opinion is internally inconsistent, as he opined that Gentry would be unable to lift less than ten pounds, but she would be able to carry less than ten pounds (at least rarely). The ALJ noted that despite Gentry's complaints of significant back pain, testing showed that she had normal bone density in her

lumbar spine and hips and a lumbar spine x-ray revealed "rather mild" facet degenerative changes at L5-S1 and "mild" anterolithesis at L4-5. Filing No. 9-2 citing Filing No. 10-1 at CM/ECF p. 18. In addition, an examination in May 2016, prior to Gentry's shoulder surgery, revealed her to have a normal gait and she was able to get on and off the exam table without difficulty. Filing No. 10-4 at CM/ECF p. 25.

The ALJ's decision includes his reasons for not giving controlling weight to Senseney's and Mediema's treating source statements, stating that inconsistencies in the recommended lifting/carrying restrictions, as well the inconsistency between the statements and Gentry's own testimony regarding her health and activities of daily living, justified giving the treating physicians' opinions less weight. These reasons are supported by the evidence of record and support the ALJ's conclusion.

B. Failing to Explicitly Discuss § 404.1572 Factors

Gentry also challenges the ALJ's decision because the ALJ "ignored without comment" multiple § 404.1572 factors which favored crediting Senseney's and Mediema's opinions. These factors included the length of time Senseney treated Gentry, Senseney's board certification in family medicine, and the number of times that Senseney and Mediema examined Gentry. Filing No. 16 at CM/ECF p. 21-22. An ALJ who credits the opinion of a consulting physician over that of a treating physician must explain why the consulting physician's conclusions were considered more persuasive. Factors to be considered in weighing medical opinions from treating sources, nontreating sources, and nonexamining sources include the factors listed by Gentry. (see SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006)). However, an ALJ "is not required to discuss every piece of evidence submitted," and his "failure to cite specific evidence [in the decision] does not indicate that such evidence was not considered." Black v. Apfel, 143 F.3d 383, 386

(8th Cir. 1998). As previously discussed, the ALJ reasons for not giving controlling weight to Gentry's treating physicians were supported by the record as a whole, and there is nothing in the record to show that the ALJ "ignored" the necessary factors.

### C. Failure to Recontact Treating Physicians

Gentry argues that it cannot be reasonably disputed that Dr. Senseney and PA Mediema's opinions: (1) establish far greater limitations than the ALJ found; and (2) establish that Plaintiff met her burden of proof to establish that she is "disabled" pursuant to the Agency's definition. Filing No. 16 at CM/ECF p 18. Thus, she argues that the ALJ's rejection of Senseney's and Mediema's opinions "based upon his lay interpretation of the raw medical data was error." Filing No. 16 at CM/ECF p. 23.

Gentry asserts that if the ALJ "wanted to consider denying this claim" due to questions regarding the consistency of Senseney's and Mediema's opinions, then the ALJ should have sought additional opinion evidence, rather than denying the claim. The Commissioner argues the ALJ was under no obligation to obtain additional evidence if the ALJ determined that their opinions were inherently contradictory or unreliable, and where the ALJ is able to determine from the record whether the applicant is disabled. See Hacker v. Barnhart, 459 F.3d 934 (8th Cir. 2006).

The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004), citing 20 C.F.R. §§ 416.912(e), 416.919a(b). The administrative record in this case contains many medical records which provide an ample basis upon which the ALJ could make an informed determination of the merits of

Gentry's disability claim. The ALJ did not recontact Gentry's treating physicians or order new consultative evaluations because they were not necessary.

Finally, Gentry argues that the ALJ's rejection of Senseney's and Mediema's opinions "based on his lay interpretation of the raw medical data was error." Filing No. 16 at CM/ECF p. 23. A "finding of disability is one reserved for the Commissioner." See Robson v. Astrue, 526 F.3d 389, 393 (8th Cir. 2008). Thus, the ALJ was fulfilling his duty to weigh the evidence in the record before him.

2. Failure to properly address Gentry's objections memorandum and rebuttal evidence.

At step five, the ALJ relied upon the VE's response to a hypothetical question in finding Gentry could perform other work existing in significant numbers in the national economy. Gentry argues that this reliance was improper, because the ALJ failed to rule on or specifically address her objections memorandum and rebuttal evidence, submitted after the hearing.

At the outset, it should be noted that Gentry objected once at the hearing, specifically as to the "job incidents numbers" provided by the VE. The ALJ responded "[i]t's noted for the record and preserved for appeal." Filing No. 9-2 at CM/ECF p. 99. Although the ALJ did not use the specific verbiage to state the objection was 'overruled,' when read in context, the ALJ clearly overruled Gentry's objection by indicating that the objection was raised and preserved to be addressed by someone other than him and at the appellate level. Moreover, this issue is not raised in Gentry's brief. Rather, Gentry's argument in this case focuses on the ALJ's consideration of her *post-hearing* objections and evidence.

A. Failure to Rule on Objections Memorandum

In her "Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony," Gentry stated that "Pursuant to HALLEX I-2-2-20 'the ALJ must rule on the objection, either in writing, which shall then be marked as an exhibit in the claim folder.'" Filing No. 9-8 at CM/ECF p. 2. The cited portion of the Hearings, Appeals and Litigation Law Manual (HALLEX) relates to objections to the issues, and provides that the party must submit the objection no later than five business days before the date of the scheduled hearing. Gentry's argument in this case relates to objections to the *evidence* provided by the VE, and the objection was not submitted until *after* the hearing. As such, the cited section of HALLEX is not applicable to these circumstances.

Nonetheless, Gentry asserts on appeal that she has "constitutional and statutory rights to challenge contrary evidence such as a testifying expert, in this case, the VE." Filing No. 16 at CM/ECF p. 29. She further asserts that "there can be no serious dispute that a claimant has a right to present evidence and confront evidence against him." Id. citing 5 U.S.C. § 556(d) (2016). She refers to HALLEX § I-2-6-74(B), arguing that numerous courts have ruled that an ALJ's failure to adequately address, or address at all, objections/challenges to vocational testimony is error, requiring remand because it undermines the step five finding and effectively precludes meaningful judicial review. Filing No. 16 at CM/ECF p. 30.

HALLEX I-2-6-74(B) provides that an ALJ "may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." However, this provision refers to objections made during the hearing, and is silent on how objections made after the hearing may be addressed.

In support of her argument, Gentry cites Delmonaco v. Berryhill, 2018 WL 1448558 (D. Or. Mar. 23, 2018), and Nunley v. Berryhill, No. CV H-17-0072, 2018 WL 1167700, at *7 (S.D. Tex. Feb. 14, 2018). Delmonaco held that the ALJ erred in failing to rule on post-hearing objections, where the version of HALLEX I-2-5-55 (Obtaining Vocational Expert Testimony at the Hearing) applicable at the time of the hearing required an ALJ to respond to post-hearing objections. Nunley held that the ALJ's failure to address the post-hearing objections was a clear violation of HALLEX I-2-5-55 and, therefore, a legal error, explaining:

> HALLEX outlines very specific requirements regarding the treatment of the VE's testimony. See HALLEX §I-2-5-55, I-2-6-74. *Prior to the updates in June 2016*, HALLEX § I-2-5-55 stated, 'If a claimant raises an objection about a VE's opinions, the ALJ must rule on the objection and discuss any ruling in the decision.' By its terms, the text applied to all objections regardless of when they were filed. (emphasis added).

Nunley 2018 WL 1167700, at *7 (S.D. Tex. Feb. 14, 2018) (emphasis added). However, the current version of HALLEX I-2-5-55, dated June 16, 2016, went into effect over a year prior to the ALJ hearing in this case and contains no requirement that the ALJ review all objections, regardless of when they were filed. Thus, Nunley is distinguishable, and no ruling on post-hearing objections was explicitly required.

B. Failure to Mention "outcome-determinative rebuttal evidence"

Gentry asserts that, "despite the fact that the objections memorandum was part of the record at the time of the ALJ's decision … the ALJ did not even *mention* it." Filing No. 16 at CM/ECF p. 31. She argues that the ALJ's failure to mention the evidence and objections is compounded by the fact that he specifically left the record open after the hearing so that Plaintiff's representative could submit, in writing, objections to the vocational testimony. Filing No. 9-2 at CM/ECF p. 137.

17

The Code of Federal Regulations provides that "[y]ou must submit any written evidence no later than 5 business days before the date of the scheduled hearing." See 20 CFR 405.331(a) (2015). Gentry is correct that it is difficult to anticipate what evidence will be provided by a VE, and to respond accordingly at the hearing. It is permissible, in certain circumstances, to submit evidence after the hearing and before the hearing decision is issued. Section 405.331(c) provides that if a petitioner misses the deadline described in paragraph (a), the ALJ will accept the evidence if there is a showing that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would affect the outcome of the claim, and: 1) the action was misleading; 2) there were limitations which prevented the claimant from submitting the evidence earlier; or, 3) there was an unusual, unexpected, or unavoidable circumstance beyond the claimant's control that prevented the submission of the evidence. Gentry requested, and was granted, the opportunity to submit an objection and evidence after the VE's testimony. However, Gentry provides no authority which states that an ALJ must consider such evidence submitted after the deadline explicitly set at the hearing. See, also Brownell v. Berryhill, No. CV 17-11462-FDS, 2018 WL 615662, at *2 (D. Mass. Jan. 29, 2018)

During the hearing in this case, the ALJ stated the record remained open for seven days following the hearing. But Gentry's Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony (Filing No. 9-8 at CM/ECF p. 2-13) was dated August 9, 2017, more than two weeks after the July 21, 2017 hearing. Even assuming Gentry's post-hearing submission met the criteria of 20 CFR 405.331(a) (2015), the ALJ is not required to keep the record open indefinitely: He was not obligated to review materials submitted outside of the seven-day time frame he provided.

18

Gentry was given the opportunity to object, and to fully respond to the VE's testimony, but she failed to do so in a timely manner. Since Gentry's objections were not timely raised, Gentry cannot validly claim her rights to object, to receive a ruling on her objections, and to submit additional information for the ALJ's consideration, were denied in violation of her due process rights. The ALJ did not err in failing to discuss Gentry's untimely post-hearing evidentiary objections and rebuttal evidence.

Upon review of the record as a whole, the court finds substantial evidence supporting the ALJ's decision.

Accordingly,

IT IS ORDERED:

1) The decision of the Commissioner of the Social Security Administration is affirmed.

2) Judgment in accordance with this memorandum and order will be entered by separate document.

November 19, 2018.　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　*s/ Cheryl R. Zwart*
　　　　　　　　　　　　　　　　United States Magistrate Judge